Good morning, Your Honors. This is an ERISA preemption case, it's intersection with the Illinois Wage Payment Collection Act. Ms. Studer was an employee of a hospital. She was allowed to apply for a job, and she was not allowed to work. She was not allowed to work. The next case is Studer v. Katherine Shaw Bethea Hospital. Mr. Lee. She was allowed to accrue vacation time and put it in a time bank, and then use that time as she saw fit, as is normal with employers. That benefit came about as the result of an employer policy that set forth who could accrue vacation, at what rate they could accrue vacation. That policy did state that at separation, the employee would be paid cash for 80 hours of vacation time, and the remainder, anything over 80 hours, would be put in essentially a health savings account. This stands in tension or in opposition to the Wage Payment Act that says all earned vacation has to be paid at separation. But I guess the key point that your opponents make is that even when you look at this PDL, I'll call it a policy, it incorporates this WBA, this welfare benefit plan. And so you can't really say they're separate. And so what the employer, the hospital, has promised to do is pay people a certain amount of their vacation time, up to the 80 hours when they leave, for whatever reason. And the rest of it rolls into, you know, there's value. And I understand that this WBA really is just composed of these relatively small amounts of money. I looked at the plan, and it looks like, you know, for her it's something in the order of $5,000, and for somebody else it's going to be something else. And you draw it down, and once you've drawn it all down, it's gone. So it's not as though this is a broader welfare benefit plan that people pay into month after month, and it's out there. It's just sort of a deferred payment for a particular purpose of this money. But since the PDL itself, PDL policy itself incorporates that, why doesn't that pull you into this VBA plan? And once you're into the VBA plan, you're in ERISA territory. Sure. And the first element in Davila sort of addresses that tension, and that is that to make a claim under ERISA, the genesis of the benefit has to be an ERISA qualified plan. And I'm following that, because the PDL policy itself says a certain amount of this accrued vacation is going to go to the ERISA plan, the VBA plan. And so before you have any right to that, you've got to jump through the ERISA hoops. I mean, people can set up their plans any way they want to. Once you have a plan, you have all sorts of ERISA obligations. But this is a way of setting up a plan, right? Well, and I think that I slightly disagree with Your Honor on that point, that an employer in Illinois can conform with the Wage Payment Collection Act or conform with ERISA. This doesn't conform with either. Where you have a plan that avoids the obligation under the Wage Act to pay a lump sum at separation, it also doesn't require the PDL. You have the right to the lump sum on separation under this particular employment arrangement. But with that reading of the law, the employer can set up their policy and determine, well, at the end of employment, you get Bitcoin, or you have to buy $1,000 in Beanie Babies. Well, I mean, an employer could do that. It might be a foolish thing to do. But the point here is that this employer decides that there's going to be this VBA, this Voluntary Employees Benefit Association Trust. And with that VBA trust, it's an ERISA sort of thing. Many employers might not want to use that. Many employers might be perfectly happy to live with the Illinois wage payment system. Somebody leaves, they get paid their accrued vacation. I'm sure that happens every day in Illinois. But this particular employer decided to create the trust to begin with and to provide that the money, the excessive 80 hours worth, goes into the trust. Sure, but I think once you step out, no employer is going to not offer vacation benefits. I think they would be unattractive. You think so? What an optimist you are. Right, right. So once you step out and offer vacation benefits, you have to, they had options. They can conform with the Wage Payment Collection Act, or they can make it an ERISA benefit. So you don't think there's any room for a qualified offer, a partial offer of vacation benefits? No, I don't. Your world is all or nothing. Correct. I think they have to comply with ERISA and with vacation benefit plans. It's my understanding they don't have to fund them. It doesn't place that kind of burden on Illinois or employers in this circuit. So they can conform with the administrative requirements of ERISA, which is not a large burden, or they're stuck with the Wage Payment Collection Act, which is very strong. It uses very strong language. Employees have an absolute right to take time like this. That is unusual language. And further in that same regulatory guidance, it says no employer policy can affect a forfeiture of vacation time. But why is it a forfeiture if it's just rolled over into the VEBA? And at some point or another, a lot of people anyway are going to need $5,000 toward medical expenses. It doesn't disappear. It sits there until she uses it, right? No, it's veiled behind a claims process that can be approved or denied for qualified expenses. No, I understand that. That is much different than money in her pocket. I get that she might like the upfront, but you're saying it's forfeited, and I'm having trouble seeing the transformation as a true forfeiture. It is considered wages under the Wage Payment Act, and it's not paid as wages. It is placed in the VEBA and leaves... But doesn't the term wages have to do with what your contract is with your employer to begin with about what you're going to be paid? And it promised on the final check to pay only 80 hours and deposit the rest in the VEBA. I think that goes with FLE's argument that she knew this was happening. She knew it all along. Right. But that doesn't change whether the genesis of the benefit is an ERISA plan, and then whether the second element of DEVILA, whether the Wage Payment Act creates independent duties on the employer that arise because of their actions. The Wage Payment Act certainly does. It would exist... This circuit has not addressed this directly, and other circuits have danced around the second, third, sixth, and ninth, to adopt what I would phrase as a whether or not test. The duty is independent if it would exist whether or not this employer adopted an ERISA plan. That would certainly, the Wage Payment Act, the burdens and duties imposed thereby would exist whether or not this ERISA plan was in existence. I think preemption fails under both elements of DEVILA, and the District Court should be reversing this remand in your honor. Thank you. Okay. Mr. Zellinger. Good morning. May it please the Court and Counsel. My name is Tim Zellinger. I represent Catherine Shaw Bethea, or KSB Hospital, in this matter. I want to go right to your Honor's question about this contract of employment. Counsel for Appellant talks about a test of whether or not using the independent legal duty prong of DEVILA. The test, however, is not whether or not an independent statute exists, or whether or not a legislature has adopted a statutory scheme. That's not what DEVILA said. Because if that had been the result of DEVILA, the Supreme Court would have said, reversed, it's not preempted because Texas had adopted a separate health care liability act. But that's not what the Court said. It is not a whether or not test. It's whether or not an independent legal duty, separate and apart, if you will, from the plan exists. Let me ask you this. The Illinois Wage Payment and Collection Act could be seen as one of these statutes that states pass that's designed to supersede the bargaining process. I mean, without an Illinois Wage Payment and Collection Act, you could imagine that every employer and employee would have some understanding, you know, in the contract of how, whether it's accrued vacation time or commissions or whatever, whatever goes into the Wage Payment Act, and they would decide. But the state, you know, in a paternalistic piece of legislation, has decided we're going to protect people, so we're going to have this absolute right. So why doesn't that influence our understanding of Ms. Studer's relationship with the hospital? So that, you know, she accrues this, whatever it is, about 250 hours worth of paid leave. She's probably feeling like a fool. She didn't take more vacation time while she was there. But anyway, she didn't. She gets the cash equivalent of only 80 hours and the other hours, which are indistinguishable. She's earned them all the same way. She's accrued them all the same way. All of a sudden, somebody says, oh, no, we're going to keep this $5,000 of yours. And if you ever get sick, you know, maybe you'll get some benefit of it. If you're healthy, you won't. But that's what we're going to do. So why doesn't that conflict with just the fundamental notion that there's really a contract? Well, I think if we look at the Illinois Wage Payment Act, the legislature in Illinois addressed that, what Your Honor is suggesting is a conflict. Because the statute itself talks about vacation accrued consistent with the employee's contract or policies. The statute doesn't exclude the possibility that part of a policy or part of the contract of employment would, in fact, incorporate, as it does here, an ERISA plan. There's no provision in the statute that conflicts with the ability of the employer, pursuant to that contract, pursuant to those policies, to set up this process by which at termination a portion of their benefit, a portion of what's there, goes into this VEBA plan, which is really a health reimbursement account, separate and apart from what they're being paid out in accrued vacation. So it has to be your position that the paid days leave, this PDL policy, is just inseparable from the VEBA plan? That they really are all one big thing? Well, I don't know if I would use the word inseparable, Your Honor, but I think they coexist. You have elements of the PDL that operate separate and apart from, ultimately, this health reimbursement account. Because if you do your vacation, you never get to the health reimbursement account. But during your employment, if you accrue excess PDL, that excess, while you're still an employee, will go into your health reimbursement account. And certainly at the time of termination, a certain amount is going to be paid out to you, and a certain amount is going to go into the health reimbursement account. How portable is this health reimbursement account? If she decides to move to Montana, is she still going to be able to get the benefit of this $5,000? Yes. I believe under the plan documents, Your Honor, it doesn't matter where she lives. It matters whether or not the expense incurred is a qualified medical expense that would be eligible for reimbursement. If she's in Alaska, Montana, pick any number of states, and incurs a medical expense, if it's what the IRS would call a qualified medical expense, she can seek reimbursement. So is this just the usual set of exclusions for cosmetic things and experimental? I would say yes, I believe so, Your Honor. It's a typical, what you would call either a cafeteria-style plan or a Section 105 plan, where you would get reimbursed for qualified medical expenses. So there is no conflict.  And so, therefore, they can operate in tandem. But in this case, they don't operate in tandem because the claim that's being sought, the claim that was filed by Ms. Studer, is, in fact, for the same money that was put into the health reimbursement account. Right. She wants to pull it out. She doesn't really want benefits. She wants to disengage from this plan altogether. That's correct. But what Davila and the cases that deal with complete preemption talk about is if you cannot separate out the analysis, if you can't determine what the claim is or what we should do in resolving the claim without looking at the plan documents, the matter is preempted, a risk of controls. In this case, the district court correctly concluded that there's no way to analyze Ms. Studer's claim without looking at the plan documents and determining what, in fact, happened here. But it does also seem, given the nature of her interest, that 502 would be useless. Had she sued the plan for benefits, it's just a bad fit for what she wants. She wants to withdraw from the plan. I believe under 502, Your Honor, a claim can be brought by someone who's a participant or a beneficiary. That's true, but it's a claim for benefits that they bring. They say, oh, you know, I had skin surgery, and it wasn't just cosmetic. It was medically necessary, and maybe people fuss around back and forth about what it was. So that would be a 502 claim. I don't know under the plan if individual participants have the right to withdraw their accounts from the plan. Maybe you would have a 502 claim, but my understanding is that's not a right under this plan. You're sort of stuck with it whether you want it or not. But under the cases for complete preemption, Your Honor, she stands in the capacity as a participant, which is different than what this court looked at in Francesca and Skemp, where it talked about this hospital could not be a participant, could not be a beneficiary. Yeah, no, that was different. So that distinction exists. She was and is a participant under this plan. The dollars we're talking about are in the plan. The district court correctly concluded the only way to analyze the claim, the only way to look at this, is you are going to have to go to the plan documents, which, as Your Honor noted, are specifically incorporated into the PDL policy. That was the environment that she worked in. She was aware of that. If she didn't want that result, she controlled her ability to use vacation time. And so here, the hospital did nothing more than apply the specific plan at issue. And it's not a forfeiture. She did not lose the value of that time because it's put into an account. As Your Honor noted, there's approximately $5,206 sitting in that account for her to use for a qualified medical expense. It's really the hospital's way of kicking down the road any obligation it has to pay her, the equivalent of her paid leave, and maybe never, but maybe just later. So it constrains the amount of a lump sum that they have to pay upon separation. Well, it's really a mutual benefit, Your Honor, because the participant— She doesn't see it that way. I understand. We wouldn't be here if she saw it that way. But in this situation, the money is transferred to her in a tax-free account. She doesn't have to pay income tax on it. And the money is available for her to use for, as Your Honor noted, virtually everyone has certain out-of-pocket medical expenses that at some point in time she's going to become eligible for. It could have been the day after she separated from employment. She incurred a medical expense and three days later applied and got the money. So the time is in her purview as to when that expense may be incurred. But it's not a forfeiture. The money is there and available for her to use. And you said tax-free. If it's a qualified medical expense because it's a health reimbursement account, it's tax-free to her. That's the purpose of that type of plan. The district court noted that in his opinion when authoring why you have these types of plans. So it is, in our view, it is a benefit to both parties. Now, it's not a type of plan that could be set up where you would put Bitcoin in or, as counsel said, Beanie Babies, because it does require it to qualify under the ERISA standards and also qualify as what would be a health reimbursement account. So all those things have to be met, and there certainly was no suggestion at the district court that the hospital's plan did not meet the appropriate test. There was no challenge at the district court level in response to summary judgment that this was, in fact, a qualified plan. It met the statutory requirements. The money was, in fact, transferred as she admitted it in response to summary judgment into a health reimbursement account. Okay. Thank you, Your Honor. Thank you. Anything further, Mr. Lee? Quickly, Your Honor. I think the jury's still out whether Ms. Studer is economically better off with this tax-free benefit in a health savings account where the future value of that $5,000, if she doesn't use that or puts it in savings for 20 years, I'm not sure that that's set in stone. How old is she? She is 28, Your Honor. And she just moved to Wyoming, actually, so the college before was kind of interesting. All right. Close to Montana. Right, right. Also, Appellee sort of hedged on the relationship between the two plans. Earlier in their briefs, they referred to them as inextricably intertwined. Today they said that there's- Side by side. Sure, sure. Well, this benefit originates from one or the other. One's not an ERISA plan and is an employer policy. The other is an ERISA plan. Like Your Honor pointed out, 502, this is not a 502 claim. She could not have brought this claim for benefits owed to her under 502, and I think with that, it's clear that this fails. All right. Thank you very much, then. Thanks to both counsel. We'll take the case under advisement.